IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00452-MSK-MEH

DARRELL HAVENS,

      Plaintiff,

v.

TOM CLEMENTS, in his individual capacity,
RICK RAEMISCH, in his official capacity as Executive Director of the Colorado Department of
Corrections,
CARMEN MEYERS, in her individual and official capacities,
JAIME HARRELSON, in her individual and official capacities,
WONDA JACOBS, in her individual and official capacities,
KIMBERLY BOYDIN, in her individual and official capacities,
HERMELLA ASSEFA, in her individual and official capacities,
EMANUEL OKAI, in his individual and official capacities, and
PHYSICIANS HEALTHCARE PARTNERS,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Michael E. Hegarty, United States Magistrate Judge**.

Before the Court is a Motion to Dismiss filed by Defendants Rick Raemisch (in his official

capacity as Executive Director of the Colorado Department of Corrections), Carmen Meyer,

Hermela Assefa, Wonda Jacobs, Emmanuel Okai, and Jamie Harrelson[1] (the "State Defendants")

[filed August 5, 2013; docket #39].  The motion has been referred to this Court for recommendation

[filed October 25, 2013; docket #57].  The motion is briefed to the extent required by local rule, and

the Court finds that oral argument will not assist in the adjudication of the motion.  Based upon the

---

[1]Defendants assert that Defendant Tom Clements is deceased and that Defendant Kimberly
Boydin is not a DOC employee and, thus, service was not waived on their behalf.  *See* docket #12.

record herein and for the reasons that follow, the Court RECOMMENDS that Defendants' motion

be **GRANTED IN PART AND DENIED IN PART** as set forth herein.[2]

## BACKGROUND

Plaintiff initiated this civil rights lawsuit on February 20, 2013, as a *pro se* litigant

incarcerated an the Denver Reception & Diagnostic Center, Denver, Colorado.  Plaintiff filed the

operative Amended Complaint on April 5, 2013 (docket #9) in accordance with the Court's March

1, 2013 order (docket #5).  During initial review, Judge Babcock permitted the following Eighth and

Fourteenth Amendment claims to proceed in this litigation against the State Defendants: (1) Rick

Raemisch denied Plaintiff corrective surgery; (2) Carmen Meyer disregarded Plaintiff's bladder

infection and mis-prescribed antibiotics; (3) Jaime Harrelson failed to provide seizure medication

and mis-prescribed antibiotics; and (4) Hermella Assefa, Wonda Jacobs and Emmanuel Okai would

not place Plaintiff, a quadriplegic, on the toilet and left him lying in his own feces for hours.

### I.    Facts

The following are factual allegations (as opposed to legal conclusions, bare assertions, or

merely conclusory allegations) made by the Plaintiff in his Amended Complaint, which are taken

---

[2]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72.  The party filing objections must specifically identify those findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *In re Garcia*, 347 F. App'x 381, 382-83 (10th Cir. 2009).

as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

With respect to the State Defendants, Plaintiff claims that the Executive Director[3] "stopped" a procedure in or about November 2011 described by the Plaintiff as a "fusion with bars and screws, permanent fixtures" to correct a "70 degree scoliosis curvature."  Amended Complaint, docket #9 at 7.  The procedure required a CT scan first, which was performed, but Plaintiff alleges the Executive Director declined the remainder of the procedure because the "paperwork seemed like 'cosmetic.'" *Id.*

Plaintiff also alleges that he has had "nonstop" bladder infections resulting from conduct by Meyer and Harrelson in "misusing antibiotics."  Plaintiff claims that "[f]rom Nov 24- Dec 25 [Plaintiff] was sent [ ] in [sic] ambulance 3 times and changed [sic] 8 different antibyotics [sic] and wiped his immune system causing him to be totally substectable [sic] of catching any little virious [sic]."  In addition, Plaintiff asserts that he suffered a seizure as a result of Harrelson refusing to renew medication known as Klonopin.

Further, Plaintiff alleges that on December 9-10, 2012, Assefa and Okai left him lying in his own feces from 11:15 p.m. to 4:00 a.m.  Plaintiff contends that he pushed his nurse call button from 11:15 p.m. to 2:30 a.m. trying to get assistance, but he was told to wait for "offender care aides" to come  at 4:00 a.m.  Plaintiff asserts that he has been denied help with placement on the toilet and left several times laying in feces by Assefa, Okai and Jacobs.

---

[3]Mr. Raemisch appears in his official capacity in this case, as he succeeds Tom Clements as the Executive Director of the CDOC.

## II.     Procedural History

Based upon these factual allegations, Plaintiff alleges that the State Defendants deprived him of equal protection under the Fourteenth Amendment and of his Eighth Amendment right against cruel and unusual punishment by their deliberate indifference to Plaintiff's serious medical needs. Plaintiff seeks an order requiring the performance of the corrective surgery and granting required training on decisionmaking for each named Defendant, payment of the "jurisdiction[al] amount" from each Defendant, and costs. *Id.* at 11.

The State Defendants responded to the Amended Complaint by filing the present motion arguing the Eleventh Amendment bars Plaintiff's official-capacity claims and Plaintiff fails to state individual-capacity claims for relief under 42 U.S.C. § 1983.  Specifically, Defendants argue they are entitled to Eleventh Amendment immunity to the extent they are sued in their official capacities. Further, Defendants contend they are entitled to qualified immunity in their individual capacities based upon Plaintiff's failure to state Eighth and Fourteenth Amendment violations.  Defendants assert Plaintiff merely disagrees with them as to whether corrective surgery was necessary and/or describes conduct that amounts to mere negligence, which does not state a violation of the Eighth Amendment.  Moreover, Defendants argue Plaintiff fails to state "due process" claims[4] or to allege physical injury necessary for a request for compensatory damages.

Plaintiff responds by providing copies of medical records that allegedly support his allegations.  He states that Defendants knew or had reason to know that Plaintiff was in need of the surgery, as doctors had recommended surgery rather than "bracing" to correct the scoliosis.  Plaintiff

---

[4]As set forth more fully below, the Court finds that Plaintiff attempts to allege equal protection claims, rather than due process claims, under the Fourteenth Amendment.

concludes that his "allegations hold up well under [the deliberate indifference] test because they implicate serious medical concerns and cannot be characterized as involving either simply inadvertence or a mere difference of professional medical opinion."  Response, docket #18 at 2.

Although provided the opportunity to do so, the State Defendants did not file a reply brief in support of their motion.

The Court finds that it need not consider nor rely upon the documents Plaintiff provided with his response for adjudication of the present motion; thus, the Court will not convert the motion into a motion for summary judgment pursuant to Fed. R. Civ. P. 12(d).  The Court is now fully advised and recommends as follows.

## LEGAL STANDARDS

### I.      Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id. Twombly* requires a two prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory.  *Id.* at 679-80.  Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id.* at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that

they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

## II.    Dismissal of a Pro Se Plaintiff's Complaint

A federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers. [The] court, however, will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). The Tenth Circuit interpreted this rule to mean, "if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, this interpretation is qualified in that it is not "the proper function of the district court to assume the role of advocate for the pro se litigant." *Id.*; *see also Peterson v. Shanks*, 149 F.3d 1140, 1143 (10th Cir. 1998) ("we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded") (quoting *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989)). A *sua sponte* dismissal "without

affording the plaintiff notice or an opportunity to amend is proper only 'when it is patently obvious that plaintiff could not prevail on the facts alleged, and allowing him an opportunity to amend his complaint would be futile.'" *Curley v. Perry*, 246 F.3d 1278, 1281-82 (10th Cir. 2001) (quoting *Hall*, 935 F.2d at 1110 (additional quotation marks omitted)).

<u>**ANALYSIS**</u>

Defendants advance arguments that Plaintiff's official-capacity claims must be dismissed pursuant to the Eleventh Amendment and that Plaintiff fails to allege facts sufficient to state claims for cruel and unusual punishment and a violation of "due process." The Court will begin with an analysis of the Eleventh Amendment argument, then turn to Defendants' arguments that Plaintiff fails to state claims for violations of the Eighth and Fourteenth Amendments. Finally, the Court will determine whether Plaintiff's request for compensatory damages should be dismissed.

**I.     Sovereign Immunity**

Defendants in their official capacities claim they are absolutely immune from liability pursuant to the Eleventh Amendment of the United States Constitution. Plaintiff appears to argue that he attempted to sue the state in this case, but his claims were summarily dismissed.

Claims against state officials in their official capacities are essentially claims against the state entity. *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted). It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an

unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of Noatak & Circle Village*, 501 U.S. 775, 785-86 (1991).   Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of his or her federal rights. *See Ex parte Young*, 209 U.S. 123, 159-60 (1908).   But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. Univ. of New Mexico Sch. of Med.*, 159 F.3d 487, 495 (10th Cir. 1998) (citations and quotations omitted).

Here, in addition to economic and non-economic damages, Plaintiff seeks an order requiring he "receive the surgery that defendants have agreed to happen but then stopped for no legitament [sic] reason and request each [sic] correction officials and medical staff take training in making-decision [sic] making." *See* docket #9 at 11.   Thus, any claim by the Plaintiff for money damages against the Defendants in their official capacities is barred by the Eleventh Amendment.   However, the Plaintiff also seeks prospective injunctive relief in the forms of approved corrective surgery and training in decision-making. *Id.*   To the extent the Plaintiff has standing to seek such relief and states plausible Eighth Amendment and/or equal protection claims, the requested injunctive relief falls within the *Young* exception to Eleventh Amendment immunity. *See, e.g., Buchwald*, 159 F.3d at 496 (where plaintiff alleged continued exclusion from medical school violated her constitutional rights, she stated a proper claim against defendants in their official capacities seeking a prospective

injunction ordering her admission to the medical school).   Accordingly, Plaintiff's claims for prospective injunctive relief against the Defendants in their official capacities may proceed, as long as the Plaintiff states plausible claims for equal protection violations and/or cruel and unusual punishment.

## II.   Qualified Immunity

Defendants assert they are entitled to qualified immunity on the Eighth and Fourteenth Amendment claims against them in their individual capacities.   Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions.  *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "It is an entitlement not to stand trial or face the other burdens of litigation." *Ahmad v. Furlong*, 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted).   "The privilege is an immunity from suit rather than a mere defense to liability."  *Id.*

Qualified immunity is designed to shield public officials and ensure "that erroneous suits do not even go to trial." *Hinton v. City of Elwood, Kan.*, 997 F.2d 774, 779 (10th Cir. 1993) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985); *Harlow*, 457 U.S. at 806-08 (1982); *Pueblo Neighborhood Health Ctrs. v. Losavio*, 847 F.2d 642, 645 (10th Cir. 1988)).   Consequently, courts should address the qualified immunity defense at the earliest possible stage in litigation. *Medina v. Cram*, 252 F.3d 1124, 1127-28 (10th Cir. 2001); *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995).

When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his

constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court has discarded a review process that required courts to examine these questions sequentially, first considering whether a right had been violated, and then second – if the court concluded a right had been violated – whether that right was clearly established at the time of the alleged violation. *Pearson*, 555 U.S. at 232-35. *Pearson* instead affords courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, for Plaintiff's Eighth and Fourteenth Amendment claims, the Court examines first whether Plaintiff has alleged sufficient facts to support his claims that Defendants violated his constitutional rights of equal protection and against cruel and unusual punishment. If the Court finds that Plaintiff's facts state plausible violations of a right, the Court will then proceed to analyze whether Plaintiff's constitutional right was clearly established at the time of the alleged conduct.

A.    Eighth Amendment

Under the Eighth Amendment, prisoners are constitutionally entitled to "humane conditions of confinement guided by 'contemporary standards of decency.'" *Penrod v. Zavaras*, 94 F.3d 1399, 1405 (10th Cir. 1996) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)). Accordingly, prison officials must "ensur[e] inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and ... tak[e] reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir. 1998) (citing *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994)). Prisoners state a claim of cruel and unusual punishment under the Eighth Amendment by

10

alleging prison officials demonstrated "deliberate indifference to a prisoner's serious illness or injury," or that prison officials "have, with deliberate indifference," involuntarily exposed a prisoner to conditions "that pose an unreasonable risk of serious damage to [the inmate's] future health." *Helling v. McKinney*, 509 U.S. 25, 35 (1993);  *Estelle,* 429 U.S. at 105.

With respect to a serious illness or injury, Plaintiff must meet both the objective and subjective components constituting the test for deliberate indifference.  *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006).  The objective component is met "if the harm suffered is 'sufficiently serious' to implicate the Cruel and Unusual Punishment Clause."  *Id*. (quoting *Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006), *overruled on other grounds by Robbins v. Okla.*, 519 F.3d 1242 (10th Cir. 2008)).   The Tenth Circuit established "a medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Horton v. Ward*, 123 F. App'x 368, 371 (10th Cir. 2005) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 2005)).

The subjective component is met if the plaintiff demonstrates defendants "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan*, 471 F.3d at 1159 (quoting *Kikumura*, 461 F.3d at 1293).  The subjective component requires an "inquiry into a prison official's state of mind when it is claimed that the official has inflicted cruel and unusual punishment."  *Kikumura*, 461 F.3d at 1293 (quoting *Farmer*, 511 U.S. at 838).  This component is equivalent to "criminal recklessness, which makes a person liable when she consciously disregards a substantial risk of harm." *Beauclair v. Graves*, 227 F. App'x 773, 776 (10th Cir. 2007) (quoting *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005)).

11

"A prisoner may satisfy the subjective component by showing that defendants' delay in providing medical treatment caused either unnecessary pain or a worsening of [the] condition." *Mata*, 427 F.3d at 755.  However, "a delay in medical care 'only constitutes an Eighth Amendment violation where the plaintiff can show the delay resulted in substantial harm.'" *Id.* at 751 (quoting *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001)).  Substantial harm includes "lifelong handicap, permanent loss, or considerable pain." *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001).

Here, Plaintiff alleges that he, a quadriplegic, has suffered a seizure and multiple bladder infections, and has been denied corrective surgery that "would allow or give him the ability to use the restroom on his own, walk, and not [sic] in as much pain or needing medication," as a result of Defendants' alleged conduct. Plaintiff argues his needs are objectively serious to warrant Eighth Amendment protection from a delay or denial of medical treatment.  The Court agrees; taking Plaintiff's allegations as true, he experienced a seizure and was transported by ambulance for the bladder infections and, thus, required medical treatment.  Therefore, the Court finds that Plaintiff has plausibly alleged the objective component of an Eighth Amendment claim.  Next, the Plaintiff must allege sufficient facts demonstrating the subjective component that Defendants consciously disregarded a substantial risk of harm.

First, with respect to Raemisch's denial of corrective surgery, the Plaintiff has failed to state facts demonstrating that the Executive Director "knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it."  Plaintiff alleges that the surgery would allow him to become more independent and reduce pain; however, there is no indication that, without the surgery, there is a substantial risk of harm to the Plaintiff.

To the extent that Plaintiff believes the Executive Director should have approved the surgery, the Plaintiff's disagreement with this medical treatment is insufficient to succeed on his Eighth Amendment claim. As the Tenth Circuit established in *Johnson v. Stephan*, 6 F.3d 691, 692 (10th Cir. 1993), a difference of opinion between a prisoner and prison medical staff regarding the treatment or diagnosis of a medical condition does not constitute deliberate indifference. "So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be met." *Self v. Crum*, 439 F.3d 1227, 1233 (10th Cir. 2006).

In *Self*, the Tenth Circuit held that the "subjective component [of an Eighth Amendment claim] is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his medical judgment." *Id.* at 1232. "[D]ecisions as to whether to consult a specialist or undertake additional medical testing" have traditionally fallen into this category. *Id.* Unless the need for additional medical treatment or a referral is obvious, a defendant's failure to provide these services is not actionable. *Id.* "Obviousness" may arise in cases where (1) a medical professional is aware of his inability to provide adequate treatment but delays or refuses to provide a referral; (2) a medical professional fails to treat a medical condition so obvious that even a layman would recognize it; or (3) a medical professional completely denies care despite recognizable symptoms which potentially create a medical emergency. *Id.*

Although Plaintiff alleges that he "needs" corrective surgery, decisions of this nature traditionally fall within the scope of a physician's medical judgment and are, therefore, not actionable under the Eighth Amendment absent a showing of obviousness. *See Self*, 439 F.3d at 1232. Here, the Plaintiff has not alleged that Raemisch, although not a medical professional, has

failed to treat his condition or has "completely denied him care" in the face of emergency-like symptoms. Plaintiff has also fails to allege that his "need" for corrective surgery is so obvious that even a lay person could have recognized it. Accordingly, the Court recommends that the District Court find Plaintiff has failed to state an Eighth Amendment claim against Raemisch.

In addition, Plaintiff alleges that Defendant Harrelson, a physician's assistant, refused to renew his medication, Klonopin, although Harrelson knew Plaintiff could not go without it, and Plaintiff suffered a seizure as a result. Plaintiff also asserts that Harrelson and Defendant Meyer, another physician's assistant, "misused" antibiotics by changing them eight times causing Plaintiff's immune system to be "wiped" so that he was susceptible to viruses, and causing Plaintiff to suffer "nonstop" bladder infections such that he was "sent out in an ambulance 3 times."

Defendants counter that, even if Plaintiff's allegations are true, Plaintiff fails to allege Harrelson and Meyer consciously disregarded a substantial risk of serious harm; rather, the allegations constitute mere negligence. The Court agrees; while a seizure can be serious, Plaintiff fails to allege that he suffered any actual harm or injury from the seizure. Further, Plaintiff does not allege that Harrelson and Meyer failed to treat his bladder infections but, rather, he alleges they "changed" the antibiotics eight times, likely since the medication prescribed was not curing the infection. Again, Plaintiff does not allege that Harrelson and Meyer failed to treat his condition or "completely denied him care" in the face of emergency-like symptoms. *Self*, 439 F.3d at 1232. Accordingly, the Court recommends that the District Court find Plaintiff has failed to state Eighth Amendment claims against Harrelson and Meyer.

Finally, Plaintiff alleges that Defendants Assefa and Jacobs, both registered nurses, and Okai, a certified nurse assistant, denied Plaintiff's requests to place him on the toilet and left him lying in

his own feces for hours.  Plaintiff alleges specifically that, on December 9-10, 2012, he pushed his

nurse call button from 11:15 p.m. to 2:30 a.m. trying to get assistance, but Assefa and Okai told him

to wait for "offender care aides" to come at 4:00 a.m. and left him lying in his own feces for several

hours.  Defendants counter that "[t]here are no allegations that Defendant [sic] Assefa, Okai or

Jacobs, [sic] acted with deliberate indifference or for the purpose of inflicting unnecessary and

wanton pain."  Motion, docket #39 at 12.  The Court disagrees.

Defendants acknowledge that these allegations may be construed to allege a claim

challenging the Plaintiff's conditions of confinement under the Eighth Amendment. *Id.* at 9-13.  The

Supreme Court has developed a two-part analysis to govern challenges to conditions of confinement.

*Hudson v. McMillan*, 503 U.S. 1, 7-8 (1992).   First, under the "objective component," a prisoner

must prove that the condition of which he complains is sufficiently serious to violate the Eighth

Amendment. *Id.* at 8; *see also Fogle v. Pierson*, 435 F.3d 1252, 1260 (10th Cir. 2006)).   The

challenged condition must be "extreme."  *Hudson*, 503 U.S. at 9.

> [E]xtreme deprivations are required to make out a conditions-of-confinement claim.
> Because routine discomfort is part of the penalty that criminal offenders pay for their
> offenses against society, only those deprivations denying the minimal civilized
> measure of life's necessities are sufficiently grave to form the basis of an Eighth
> Amendment violation.

*Id.* (citations and internal quotations omitted).  Therefore, the Eighth Amendment guarantees that

prisoners will not be deprived of the "minimal civilized measure of life's necessities." *Wilson v.*

*Seiter*, 501 U.S. 294, 298 (1991) (citation omitted).  "[T]he Constitution does not mandate

comfortable prisons," and conditions may be "restrictive and even harsh." *Rhodes v. Chapman*, 452

U.S. 337, 347, 349 (1981).

Second, the prisoner must show that the prison officials "acted with a sufficiently culpable

state of mind" with regard to the condition at issue.  *Hudson*, 503 U.S. at 8; *see also McBride v. Deer*, 240 F.3d 1287, 1291 (10th Cir. 2001).  The Supreme Court has stated:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Importantly, the Tenth Circuit has found that exposing an inmate to his or to others' urine and/or feces constitutes conditions sufficiently serious to state an Eighth Amendment claim.  *See DeSpain v. Uphoff*, 264 F.3d 965, 974-75 (10th Cir. 2001) (exposing a prisoner "to other inmates' urine and feces via ... standing water and also to close confinement with the odor of his own accumulated urine"); *McBride*, 240 F.3d at 1292 (requiring a prisoner to be in a feces-covered cell for three days).  In fact, "exposure to human waste carries particular weight in the conditions calculus ... [e]xposure to human waste, like few other conditions of confinement, evokes both the health concerns emphasized in *Farmer* and the more general standards of dignity embodied in the Eighth Amendment."  *DeSpain*, 264 F.3d at 975 (listing cases finding exposure to feces and urine sufficiently serious in a conditions-of-confinement analysis).

With these legal standards in mind, the Court finds that Plaintiff's allegations meet the objective prong of the Eighth Amendment analysis.  Likewise, Plaintiff alleges that, on December 9-10, 2012, he pressed the nurses' call button repeatedly and was told that he needed to wait several hours for the offender care aides to help him, and that he was left on several other occasions to lie in his feces for hours.  These allegations are sufficient to establish that Assefa, Jacobs and Okai knew of and disregarded a risk to Plaintiff's health from his lengthy exposure to his own waste.  The

16

Court concludes that Plaintiff's allegations meet the subjective prong of the conditions-of-confinement analysis.  Accordingly, the Court recommends that the District Court find Plaintiff has stated Eighth Amendment claims against Defendants Assefa, Jacobs and Okai.

Defendants Assefa, Jacobs and Okai have asserted qualified immunity from suit in this case; under the qualified immunity analysis, the Plaintiff must show that his Eighth Amendment claims against Defendants Assefa, Jacobs and Okai were clearly established at the time of the violation. For a constitutional right to be clearly established, its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotations omitted). "A plaintiff can demonstrate that a constitutional right is clearly established by references to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).

Here, the Court finds the violations alleged against Defendants Assefa, Jacobs and Okai to be clearly established by referring to the 2001 opinion by the Tenth Circuit in *DeSpain v. Uphoff*, 264 F.3d 965, 974-75 (10th Cir. 2001).  Although *DeSpain* does not involve allegations that defendants refused to place a quadriplegic on the toilet to avoid him lying in feces for hours, the opinion certainly informs officials that the Tenth Circuit and other courts in the country have recognized that intentional exposure to human waste can state an Eighth Amendment conditions of confinement claim.  Accordingly, the Court recommends that the District Court conclude Defendants Assefa, Jacobs and Okai are not entitled to qualified immunity for Plaintiff's Eighth Amendment claims.

B.     Fourteenth Amendment

Senior Judge Babcock found during initial review that Plaintiff's allegations, as set forth above, may support a Fourteenth Amendment claim.  Order, docket #10.  Although Judge Babcock did not specify the scope of the Fourteenth Amendment claim, Plaintiff specifically alleges, for his third claim for relief, a "Violation of Equal Rights."   Amended Complaint, docket #9 at 9.  Therefore, the Court rejects Defendants' interpretation of Plaintiff's allegations as asserting a due process claim.  *See* Motion, docket #39 at 14-15.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall make or enforce any law which shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. This clause prohibits the government from treating similarly situated individuals differently. *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  Here, the Plaintiff alleges that he "has been deprived his constitution[al] equal rights by being denied access [ ] to the restroom or help going and has been left several times laying in feces and also left sitting for hours by" Defendants Assefa, Okai, and Jacobs.  Amended Complaint, docket #9 at 9.  Further, Plaintiff alleges that the Executive Director (now, Raemisch) "has failed to provide equal living, working, [sic] education that able body offenders are offered and [sic] is caged like animals for the only reason of his [sic] medical condition." *Id.*  Specifically, Plaintiff states he "has been denied medical surgeries that specialist have [sic] requested are needed and not just suggested because his condition will continue to worsen." *Id.*

The Court infers from these allegations that Plaintiff contends the alleged conduct is "different treatment" based upon his classification as a quadriplegic.  As such, with respect to Defendants Assefa, Okai, and Jacobs, the Court finds that Plaintiff fails to allege he is treated differently than similarly situated non-quadriplegic inmates.  That is, there are no allegations that

Defendants Assefa, Okai, and Jacobs assist non-quadriplegic inmates with the toilet or other hygenic issues, and no allegations that these Defendants refused to assist Plaintiff because he is a quadriplegic. Likewise, Plaintiff does not allege that the Executive Director has approved similar surgeries for non-quadriplegics, or denied the corrective surgery because Plaintiff is a quadriplegic. Accordingly, the Court recommends finding that Plaintiff fails to state Fourteenth Amendment equal protection claims against the Defendants in this case.

In sum, the Court recommends that the District Court find Defendants Harrelson and Meyer are entitled to qualified immunity as to Plaintiff's Eighth Amendment claims, and that Defendants Assefa, Okai, and Jacobs are entitled to qualified immunity as to Plaintiff's Fourteenth Amendment claims, but not as to Plaintiff's Eighth Amendment claims. Further, the Court recommends that the District Court find Plaintiff has failed to state claims against Defendant Raemisch under the Eighth and Fourteenth Amendment and, thus, Plaintiff's claims for injunctive relief should be dismissed.

## III. Damages

With respect to the remaining Eighth Amendment claims against Defendants Assefa, Okai and Jacobs, Plaintiff requests "each defendant pay at least the jurisdiction[al] amount individually for the emotional distress, harrassment [sic] loss of time for missed medical appointments, loss of earning capacity, cost for disfigurement and reimburstment [sic] of fees." Amended Complaint, docket #9 at 11. Therefore, to the extent Plaintiff's allegations may be construed as claims seeking damages for pain and suffering, Defendants argue that such claims should be dismissed.

"While claims for mental and emotional distress are cognizable under § 1983, under [42 U.S.C.] § 1997e(e) 'such a suit [by a prisoner] cannot stand unless the plaintiff has suffered a physical injury in addition to mental or emotional harms.'" *Lawson v. Engleman*, 67 F. App'x 524,

526-27 (10th Cir. 2003) ((quoting *Perkins v. Kansas Dep't of Corr.*, 165 F.3d 803, 807 (10th Cir. 1999)); *see also Turner v. Schultz*, 130 F. Supp. 2d 1216, 1222-23 (D. Colo. 2001) (quoting *Perkins,* 165 F.3d at 807). "[A] prisoner cannot satisfy Section 1997e(e) by alleging only that he suffered from the physical manifestations of mental or emotional injuries." *Hughes v. Colorado Dep't of Corr.*, 594 F. Supp. 2d 1226, 1238 (D. Colo. 2009) (citations omitted).

Here, Plaintiff alleges that, as a result of Defendants' refusal to help him onto the toilet, he has been left to lie in his feces for several hours. It is unclear what physical injury, if any, the Plaintiff has suffered as a result of Defendant's conduct; however, construing the pleading liberally, it is possible that Plaintiff alleges the bladder infections were, or could have been, caused by exposure to his feces. Therefore, the Court recommends finding that Plaintiff may seek compensatory damages against Defendants Assefa, Okai and Jacobs to the extent that he alleges he suffered bladder infections as a result of being left to lie in his feces for hours.

## IV.   Leave to Amend

Dismissal of a case under Fed. R. Civ. P. 12(b)(6) is "a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Cayman Exploration Corp. v. United Gas Pipe Line*, 873 F.2d 1357, 1359 (10th Cir. 1989) (quoting *Morgan v. City of Rawlins*, 792 F.2d 975, 978 (10th Cir. 1986)). As such, in this jurisdiction, a court typically does not dismiss a claim under Fed. R. Civ. P. 12(b)(6) until the plaintiff has been provided notice and an opportunity to amend the complaint to cure the defective allegations. *See Bellmon,* 935 F.2d at 1109-10. The Court may only dismiss "*sua sponte* when it is patently obvious that the plaintiff could not prevail on the facts alleged, and allowing [them] to amend [their] complaint would be futile." *Id.* (quoting *McKinney v. Oklahoma,* 925 F.2d 363, 365

(10th Cir. 1991)).  Here, the Plaintiff has previously amended his pleading based upon the Court's

guidance provided during initial review as to defective allegations in the original Complaint:

> To state a claim in federal court, Mr. Havens must explain in his Amended
> Complaint what each defendant did to him, when the defendant did the action, how
> the action harmed him, and what specific legal right he believes the defendant
> violated. *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir.
> 2007).

Order, March 1, 2013, docket #5 at 2.  Moreover, the Plaintiff mentions nothing in his response brief

that demonstrates he may be able to cure the pleading deficiencies identified here for his Eighth and

Fourteenth Amendment claims against Raemisch, Eighth Amendment claims against Harrelson and

Meyer and Fourteenth Amendment claims against Defendants Assefa, Okai and Jacobs.

Accordingly, the Court recommends that Plaintiff be denied leave to file a second amended

complaint against these Defendants.

## **CONCLUSION**

In sum, the Court finds that Plaintiff has failed to allege plausible Eighth Amendment claims

against Raemisch, Harrelson and Meyer, and has failed to allege plausible Fourteenth Amendment

claims against Raemisch, Assefa, Okai and Jacobs.   However, the Court concludes Plaintiff

plausibly alleges Eighth Amendment claims against Defendants Assefa, Okai and Jacobs.

Accordingly, based upon the foregoing and the entire record herein, this Court respectfully

RECOMMENDS that the Motion to Dismiss filed by Defendants Rick Raemisch (in his official

capacity as Executive Director of the Colorado Department of Corrections), Carmen Meyer,

Hermela Assefa, Wonda Jacobs, Emmanuel Okai, and Jamie Harrelson (the "State Defendants")

[filed August 5, 2013; docket #39] be **GRANTED IN PART AND DENIED IN PART** as follows:

1.      Find that Plaintiff fails to state Eighth and Fourteenth Amendment claims against

Defendant Raemisch (appearing in his official capacity) and, thus, grant Raemisch Eleventh Amendment immunity and dismiss him from the case;

2.     Find that Plaintiff fails to state Eighth Amendment claims against Defendants Harrelson and Meyer and, thus, grant them qualified immunity and dismiss them from the case;

3.     Find that Plaintiff fails to state Fourteenth Amendment claims against Defendants Assefa, Okai and Jacobs and, thus, grant them qualified immunity and dismiss such claims from the case;

4.     Find that Plaintiff states Eighth Amendment conditions-of-confinement claims against Defendants Assefa, Okai and Jacobs and, thus, deny them qualified immunity from such claims;

5.     Find that Plaintiff may seek compensatory damages against Defendants Assefa, Okai and Jacobs to the extent Plaintiff alleges he suffered bladder infections resulting from prolonged exposure to his own feces; and

6.     Deny Plaintiff leave to amend his Eighth Amendment claims against Defendants Raemisch, Harrelson and Meyer and his Fourteenth Amendment claims against Defendants Raemisch, Assefa, Okai and Jacobs.

Respectfully submitted and dated at Denver, Colorado, this 4th day of November, 2013.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge