**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 13-cv-00452-MSK-MEH

**DARRELL HAVENS,**

     **Plaintiff,**

**v.**

**TOM CLEMENTS, in his individual capacity,
RICK RAEMISCH, in his official capacity as the Executive Director of the Colorado
Department of Corrections,
CARMEN MEYER, in her individual and official capacities,
HERMELLA ASSEFA, in her individual and official capacities,
KIMBERLY BOYDIN, in her individual and official capacities,
WONDA JACOBS, in her individual and official capacities,
EMMANUEL OKAI, in his individual and official capacities,
JAIME HARRELSON, in her individual and official capacities, and
PHYSICIANS HEALTHCARE PARTNERS,**

     **Defendants.**

---

**OPINION AND ORDER ADOPTING
RECOMMENDATION AND GRANTING IN PART
AND DENYING IN PART MOTION TO DISMISS**

---

**THIS MATTER** comes before the Court on the Recommendation (**#60**) of the

Magistrate Judge that the Defendants Rick Raemisch,[1] Carmen Meyer, Hermella Assefa, Wonda

---

[1] The Court takes judicial notice of the fact that Defendant Tom Clements is now deceased. Pursuant to Fed. R. Civ. P. 25(d), Defendant Rick Raemisch, in his official capacity as Executive Director of the Colorado Department of Corrections, has been automatically substituted as a party to this action for the late Mr. Clements, in his official capacity.  With regard to claims against Mr. Clements in his individual capacity, Mr. Havens would have to pursue his action against Mr. Clements' estate.  No motion for substitution under Rule 25 has been made by any party, or by the decedent's successor or representative.  The Court notes, however, that it appears the death has not previously been noted on the record.  Thus, the parties are granted 30 days from the date of this order in which to make a proper motion for substitution under Rule 25.  Failure to do so will result in dismissal of all claims against Mr. Clements in his individual capacity.  At this juncture, however, the Court does not address whether claims against Mr. Clements in his individual capacity are subject to dismissal.

Jacobs, Emmanuel Okai, and Jamie Harrelson's Motion to Dismiss **(#39)** be granted.  The

Plaintiff Darrell Havens filed Objections **(#61)** to the Recommendation.

## I.  Background

The following facts relevant to the motion to dismiss are derived from the allegations

contained in the Amended Complaint **(#9)**.

Mr. Havens, proceeding *pro se*,[2] is currently in the custody of the Colorado Department

of Corrections (CDOC) and is incarcerated at the Denver Reception and Diagnostic Center

(DRDC) in Denver, Colorado.  He was transferred to DRDC under the direction of the Executive

Director of CDOC.[3]  He is an "incomplete quadriplegic" and is "totally dependent on nurses and

Offender Care Aides."

In November 2011, Mr. Havens was sent to a spine specialist for his "70 degree scoliosis

curvature."  The specialist determined that he needed a CT scan and then prepared him to do a

"fusion with bars and screws, permanent fixtures."  The CT scan was performed, but then the

Executive Director of CDOC, along with Defendant Physicians Healthcare Partners, "stopped

the procedure" because the "paperwork seemed like 'cosmetic.'"

In May 2012, Mr. Havens' provider recommended that he again see a spine specialist

---

[2] In considering Mr. Havens' filings, the Court is mindful of his *pro se* status, and accordingly, reads his pleadings liberally.  *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).  However, such liberal construction is intended merely to overlook technical formatting errors and other defects in his use of legal terminology and proper English.  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  *Pro se* status does not relieve Mr. Havens of the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law, and in these regards, the Court will treat Mr. Havens according to the same standard as counsel licensed to practice law before the bar of this Court.  *See McNeil v. U.S.*, 508 U.S. 106, 113 (1993); *Ogden v. San Juan County*, 32 F.3d 452, 455 (10th Cir. 1994).

[3] Mr. Havens refers to the late Tom Clements in his Amended Complaint.  Because this opinion and order addresses only official capacity claims against Mr. Clements as the former Director of Prisons, the Court will refer to actions taken by Mr. Clements as actions by the Director of Prisons.

because he was suffering severe bladder infections that had caused his catheter hole to close.  He was sent to Denver Health, where he saw ortho-spine doctor, Dr. Vanderveen.  Dr. Vanderveen recommended an immediate CT scan because Mr. Havens has "4 fractured vertebra[e]/1 broken."  Apparently the procedure was "approved," but the next week "everything was stopped by [Defendant] Physician Healthcare Partners" because they did not feel it was a "progressive surgery."  Mr. Havens alleges that the recommended surgery would give him the ability to use the restroom on his own, walk, and relieve pain.  He further alleges that without the surgery, his condition will continue to worsen.

Further, Mr. Havens has suffered "nonstop" bladder infections due to Defendants Harrelson and Meyer "misusing" antibiotics.  In one month, he was sent to the hospital by ambulance three times, presumably due to infection.  His antibiotic was also changed eight times, which "wiped" his immune system and made him susceptible to viruses.

On one occasion, Mr. Havens suffered a seizure due to Defendant Harrelson refusing to renew his medication, which she knew he could not go without.

Finally, Mr. Havens has been left lying in his own feces for hours because Defendants Assefa, Jacobs, Boydin, and Okai refused to put him on the toilet.  On December 9, 2012, Mr. Havens pushed his nurse call button from 11:15pm – 2:20am, trying to get assistance.  The Defendants told him that he had to wait for Offender Care Aides to come at 4:00am.

After initial review of the Amended Complaint, the Court determined (**#10**) that Mr. Havens asserts claims under 42 U.S.C. § 1983 for violations of the Eighth and Fourteenth Amendments based on (1) the denial of corrective surgery by the Executive Director of CDOC and Physician Healthcare Partners[4]; and (2) inadequate medical treatment claims against

---

[4] The Defendant Physician Healthcare Partners has filed its own motion to dismiss (**#15**), which is addressed by separate order.

3

Defendants Meyer, Assefa, Boydin,[5] Jacobs, Okai, and Harrelson.  Mr. Havens requests an order requiring the performance of the corrective surgery and directing mandatory training on decision-making for each named Defendant.  He also seeks damages and costs.

Defendants Raemisch, Meyer, Assefa, Jacobs, Okai, and Harrelson (collectively, the Defendants, for purposes of this opinion) move to dismiss Mr. Havens' claims pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  They argue that the Eleventh Amendment bars all official capacity claims, and that the Amended Complaint fails to state individual claims under § 1983. The Defendants further contend that they are entitled to qualified immunity.

In response, Mr. Havens argues that his allegations are sufficient to state claims against the Defendants.  Specifically, he states that the Executive Director knew or had reason to know of his medical condition because he has applied for executive clemency.  He further argues that his serious medical condition is obvious.

The matter was referred to the Magistrate Judge, who recommends that the Defendants' motion to dismiss be granted in part and denied in part.  The Recommendation found that (1) the Eleventh Amendment bars claim against the Defendants in their official capacities only to the extent Mr. Havens seeks damages; (2) the Amended Complaint fails to state a claim under the Eighth Amendment against Defendants Raemisch, Harrelson, and Meyer; (3) the Amended Complaint states an Eighth Amendment conditions of confinement claim against Defendants Assefa, Jacobs, and Okai, and these Defendants are not entitled to qualified immunity on that claim; (4) the Amended Complaint fails to state a claim under the Equal Protection Clause of the Fourteenth Amendment; and (5) Mr. Havens may seek compensatory damages against

---

[5] The record shows that, to date, Defendant Kimberly Boydin has not been served.

Defendants Assefa, Jacobs, and Okai to the extent he alleges he suffered bladder infections as a result of being left to lie in his feces for hours.

Mr. Havens objects to the Recommendation, arguing that the Magistrate Judge improperly found that the Amended Complaint fails to state Eighth Amendment claims against Defendants Clements,[6] Harrelson, and Meyer.  He asserts that he has documentation that the recommended surgery would improve his mobility, which would in turn reduce urinary tract infections, compression sores, and lung infections.  He further asserts that the Executive Director was given his complete medical file, and therefore knew that Mr. Havens would continue to suffer constant infections and sores if the surgery was denied.

## II. Standard of Review

When a magistrate judge issues a recommendation on a dispositive motion, the parties may file specific, written objections within fourteen days after being served with a copy of the recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The district court shall make a *de novo* determination of those portions of the recommendation to which timely and specific objection is made.  *U.S. v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Here, Mr. Havens filed untimely Objections to the Recommendation.  Nevertheless, the Court reviews the matter under the *de novo* standard of Rule 72(b).

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all well-pled allegations in the Amended Complaint (**#9**) as true and view those allegations in the light most favorable to Mr. Havens.  *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1149 (10th Cir. 2001) (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)).  The Court must limit its consideration to the four corners of the

---

[6] Mr. Havens continues to refer to the late Tom Clements although Defendant Raemisch has been substituted as a party in his official capacity and there has been no substitution of the proper party for claims against Mr. Clements in his individual capacity.

Complaint, any documents attached thereto, and any external documents that are referenced in the Complaint and whose accuracy is not in dispute. *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Dean Witter Reynolds, Inc. v. Howsam*, 261 F.3d 956, 961 (10th Cir. 2001).

A claim is subject to dismissal if it fails to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). To make such an assessment, the Court first discards those averments in the Complaint that are merely legal conclusions or "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 1949-50. The Court takes the remaining, well-pled factual contentions as true and ascertains whether those facts, coupled with the law establishing the elements of the claim, support a claim that is "plausible" or whether the claim being asserted is merely "conceivable" or "possible" under the facts alleged. *Id.* at 1950-51. What is required to reach the level of "plausibility" varies from context to context, but generally, allegations that are "so general that they encompass a wide swath of conduct, much of it innocent," will not be sufficient. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).

### III.  Analysis

### A.  Official Capacity Claims

Mr. Havens asserts claims against each Defendant in both their individual and official capacities. The Defendants argue that claims brought against them in their official capacities are barred under the Eleventh Amendment of the United States Constitution.

Under the Eleventh Amendment, sovereign immunity prohibits federal courts from entertaining suits against states brought by their own citizens without their consent. *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990). This rule extends to state agencies

functioning as an arm of the state.  *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle*, 429 U.S. 274, 280 (1977).  Because an official capacity suit is, in all respects other than name, to be treated as a suit against the official's respective entity, the Eleventh Amendment provides immunity when state officials are sued for damages in their official capacity.  *Peterson v. Martinez*, 707 F.3d 1197, 1205 (10th Cir. 2013).

There are, however, exceptions to application of Eleventh Amendment immunity.  One such exception, known as the *Ex Parte Young* exception, permits "suits against state officials seeking to enjoin alleged ongoing violations of federal law."  *Crowe v. Dunlevy, P.C. v. Stidham*, 640 F.3d 1140, 1154 (10th Cir. 2011).  In determining whether the *Ex Parte Young* exception applies, a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.  *Id.* at 1155.

The Court finds that all § 1983 claims asserted by Mr. Havens for which he seeks damages against the Defendants in their official capacities are barred by the doctrine of sovereign immunity under the Eleventh Amendment.  These claims are properly dismissed under Rule 12(b)(1).

However, Mr. Havens also seeks prospective relief in the form of an order requiring corrective surgery.  This request for relief relates directly to his allegation that by denying surgery, the Executive Director of CDOC has violated his rights under the Eighth Amendment. The Court finds that these allegations fall within the *Ex Parte Young* exception to the Eleventh Amendment because Mr. Havens alleges an ongoing violation of federal law in the Executive Director's denial of surgery, and he seeks prospective relief.  Thus, Mr. Havens' §1983 claim

against Defendant Raemisch in his official capacity may proceed, so long as the complaint states a constitutional violation by the Defendant.

Mr. Havens asserts that the Executive Director of CDOC violated his right to be free from cruel and unusual punishment under the Eighth Amendment by denying him the opportunity to have corrective surgery for his "70 degree scoliosis curvature."

The Eighth Amendment's prohibition against cruel and unusual punishment is violated when prison officials "act deliberately and indifferently to serious medical needs of prisoners in their custody." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). Such a claim has both an objective and a subjective component. To satisfy the objective component, a prisoner's medical need must be sufficiently serious, a standard that can be met when either a doctor has diagnosed the need as requiring treatment or the need is so obvious that even a lay person would recognize the need for a doctor's attention. *Id.* To satisfy the subjective component — that is, to show the requisite deliberate indifference — a prisoner must establish that the defendant "knew [the prisoner] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Id.*

Although an Eighth Amendment claim regarding medical treatment generally concerns a medical professional's deliberate indifference in failing to treat a prisoner's serious medical need properly, it may also arise when a prison official acts with deliberate indifference in preventing a prisoner from receiving treatment or denying him access to medical personnel capable of evaluating the need for treatment. *See Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000). The Eighth Amendment may be violated if the official "knows that his role in a particular medical emergency is solely to serve as a gatekeeper for other medical personnel capable of

8

treating the condition, and if he delays or refuses to fulfill that . . . role due to deliberate indifference." *Id.*

The Court finds that the complaint sufficiently alleges that Mr. Havens has a serious medical need.  It alleges that Mr. Havens has been seen by spine specialists who have recommended that his condition be treated with surgery.  It further alleges that he has suffered severe infections due to his condition, and that his condition will worsen without the surgery.  Finally, it alleges that the procedure would increase his allow him to go to the bathroom on his own, to walk, and would relieve pain.  Even without the recommendations for surgery by spine specialists, Mr. Havens' inability for self-care, resulting in infection and pain, indicate a medical need obvious to even a lay person.

The subjective component of the claim is a closer question.  Construing Mr. Havens' allegations liberally, the Court finds that the complaint sufficiently alleges that the Executive Director acted with deliberate indifference in denying corrective surgery.  The complaint alleges that, at least in 2011, the Executive Director made the decision to "stop" the surgery because it seemed like it was cosmetic.  It can be inferred from these allegations that in making a decision regarding the necessity of the surgery, the Executive Director had access to Mr. Havens' medical records and the recommendations of the spine specialists.  Thus, it is plausible that the Executive Director knew the reasons why surgery was being recommended and what risks were posed if surgery was not performed.  Although the allegations do not provide a great deal of detail with regard to deliberate indifference, the Court finds that dismissal of the claim is inappropriate at this stage of the proceeding.

Accordingly, the motion is denied with respect to Mr. Havens' §1983 claim for violation of the Eighth Amendment against Defendant Raemisch in his official capacity. All other claims against the Defendants in their official capacities are dismissed.

## B. Individual Claims

Mr. Havens asserts § 1983 claims against Defendants Harrelson, Meyer, Assefa, Jacobs, and Okai, in their individual capacities, for alleged violations of the Eighth and Fourteenth Amendments. The Defendants move to dismiss these claims, arguing that the complaint fails to state a claim under the Eighth or Fourteenth Amendments. To the extent the complaint does state a claim, the Defendants assert the defense of qualified immunity.

### 1. Eighth Amendment

Generally, Mr. Havens alleges that Defendants Harrelson, Meyer, Assefa, Jacobs, and Okai violated his right to be free from cruel and unusual punishment in the following ways: (1) by "misusing" antibiotics and failing to renew his medication, and (2) refusing to place him on the toilet and thereby leaving him to sit in his own feces for hours. The Court notes that these allegations assert two varieties of an Eighth Amendment claim — inadequate medical care and conditions of confinement. Because the claims arise in different contexts, the Court addresses them up separately.

#### a. *Inadequate medical care by Defendants Harrelson and Meyer*

As noted above, the Eighth Amendment's prohibition against cruel and unusual punishment is violated when prison officials act "deliberately and indifferently to serious medical needs of prisoners in their custody." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). To state a claim of deliberate indifference, a plaintiff must allege both an objective component and subjective component. The objective component is satisfied where a prisoner's

medical need is sufficiently serious. *Id.* To satisfy the subjective component — that is, to show the requisite deliberate indifference — a prisoner must allege that the defendant "knew [the prisoner] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Id.*

Assuming that the complaint alleges that Mr. Havens' medical need was serious, the Court finds that the allegations are insufficient with regard to deliberate indifference. Mr. Havens alleges that Defendant Harrelson refused to renew his medication, even though he knew Mr. Havens could not go without it, and that Mr. Havens suffered a seizure as a result. He further alleges that Defendants Harrelson and Meyer "misused" antibiotics by changing them eighth times over a month, which caused his immune system to be "wiped" so that he was susceptible to viruses and which caused him to suffer "nonstop" bladder infections. There is no allegation, however, that Defendants Harrelson or Meyer knew that Mr. Havens would suffer a seizure or subsequent infections due to their failure in renewing his medication or by changing his antibiotic, or that they deliberately disregarded such risks when taking such actions. Indeed, the inference that can be drawn with regard to the changing antibiotics is that the Defendants were attempting to treat the infections with antibiotics and that they had to change them as certain antibiotics were not effective. Accordingly, the Court finds that the complaint fails to state a § 1983 claim under for violation of the Eighth Amendment against Defendants Harrelson and Meyer. The motion to dismiss is granted with respect to these claims.

> b. *Conditions of confinement against Defendants Assefa, Jacobs, and Okai*

The Eighth Amendment requires prison officials to maintain "humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). As in all Eighth Amendment claims, to show a violation of this requirement a prisoner must show an objective component and

a subjective component.  First, he must show that the conditions of confinement posed a "substantial risk of serious harm" to inmate health or safety.  *Id.* at 834.  In order to satisfy this prong, a prisoner must show that the conditions were more than uncomfortable.  *Id.*

Second, the prisoner must show that officials acted with a "deliberate indifference" to the risk.  *Id.*  The subjective prong requires a showing that the officials were actually aware of the risk and that they failed to take "reasonable measures to abate it."  *Id.*

Mr. Havens alleges that Defendant Assefa, Jacobs, and Okai refused his requests to place him on the toilet and left him lying in his own feces for hours.  Specifically, Mr. Havens alleges that on December 9, 2012, he pushed his nurse call button from 11:15pm to 2:30am trying to get assistance to go to the toilet, but he was told that he would have to wait for Offender Care Aides to come at 4:00am.  As a result, he was left lying in his own feces for several hours.

An inquiry into conditions of confinement necessarily relies on the particular facts of each situation.  The "circumstances, nature, and duration" of the challenged conditions must be considered, with no single factor controlling the outcome.  *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001).  Generally, the severity and duration of deprivations are inversely proportional, such that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while substantial deprivations of shelter, food, drinking water, and sanitation may meet the standard despite a shorter duration.  *Id.*

In *DeSpain*, the Tenth Circuit acknowledged that "exposure to human waste carries particular weight in the conditions calculus."  This is so because exposure to humane waste, like few other conditions of confinement, evokes both health concerns and the more generalized standards of dignity embodied in the Eighth Amendment.  *Id.*; *see also McBride v. Deer*, 240

F.3d 1287, 1292 (10th Cir. 2001) (conditions of confinement sufficiently serious where inmate

held in a feces-covered cell for three days).

 With these principles in mind, the Court finds that the allegations are sufficient to meet

the objective prong of the Eighth Amendment analysis.  Although Mr. Havens alleges that he

was exposed to the unsanitary condition for hours, as opposed to days, the Court finds that

seriousness of the alleged deprivation could meet the Eighth Amendment standard despite the

short duration.  Mr. Havens was not only exposed to human waste, but he alleges that he had to

lay in it for several hours.  Because Mr. Havens is completely dependent on others to move him

to and from the toilet, it is reasonable to infer that Mr. Havens was unable to avoid lying in own

feces until someone else helped him.

 The Court also finds that the complaint sufficiently alleges deliberate indifference by

Defendants Assefa, Jacobs, and Okai. It can be inferred that, due to Mr. Havens' condition, the

Defendants were aware that without assistance in toileting Mr. Havens would likely soil himself

and would be unable to remedy the problem. The Defendants acknowledged his requests for

assistance to use the toilet, but despite the impact to Mr. Havens refused to assist him.

Accordingly, the Court finds that the complaint states a § 1983 claim for violations of the Eighth

Amendment against Defendant Assefa, Jacobs, and Okai.

 Although the Court finds that the complaint states a constitutional violation by

Defendants Assefa, Jacobs, and Okai, the Defendants assert that they are entitled to qualified

immunity.  In order to overcome the defense of qualified immunity, the right alleged to have

been violated must have been clearly established in the law at the time of the alleged violation.

*Pearson v. Callahan*, 555U.S. 223, 232-35 (2009).  For a constitutional right to be clearly

established, its contours must be "sufficiently clear that a reasonable official would understand

that what he is doing violates that right." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).  A plaintiff demonstrates that a constitutional right is clearly established by referring to cases from the Supreme Court, the Tenth Circuit, or the weight of authority from other circuits.  *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009).

The Court finds that the right to be free from cruel and unusual punishment by preventing exposure to human feces was clearly established at the time of the alleged violation by Defendants Assefa, Jacobs, and Okai.  The Tenth Circuit in *DeSpain v. Uphoff*, 264 F.3d 965, 974-75 (10th Cir. 2001), acknowledged the severity of exposing an inmate to human waste.  Although *DeSpain* does not specifically involve a situation where the defendant refused to place a disabled individual on the toilet to avoid him lying in feces, the opinion informs officials that the Tenth Circuit and other courts have recognized that intentional exposure to human waste can state an Eighth Amendment conditions of confinement claim.  Accordingly, at this state of the proceeding, the Defendants Assefa, Jacobs, and Okai are not entitled to qualified immunity.

### 2.  Fourteenth Amendment

In the initial review order (**#10**), the Court stated that Mr. Havens "is asserting a violation of his Eighth and Fourteenth Amendment rights."  The order did not elaborate on the scope of these claims.  Nevertheless, the Defendants have interpreted the statement as acknowledging that Mr. Havens asserts a claim under the Fourteenth Amendment.  They interpret Mr. Havens' allegations as attempting to assert a due process claim.

The Court disagrees with the Defendants' interpretation of the order and of Mr. Havens' allegations.  The Court understands the order to say that Mr. Havens asserts claims under the Eighth Amendment, as applied against the states through the Fourteenth Amendment.  Nevertheless, the Court acknowledges that claim three of the Amended Complaint is titled

14

"Violation of Equal Rights."  Thus, at most, the Court interprets Mr. Havens' allegations as asserting a violation of the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause provides that "[n]o State shall make or enforce any law which shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend XIV, § 1.  This clause prohibits the government from treating similarly situated individuals differently.  *See City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

Here, Mr. Havens alleges that he "has been deprived his constitution[al] equal rights by being denied access [] to the restroom or help going and has been left several times lying in feces and also left sitting for hours by" Defendants Assefa, Jacobs, and Okai.  He further alleges that the Executive Director "has failed to provide equal living, working, [sic] education that able body offenders are offered and is caged like animals [sic] for the only reason of his medical condition."  He also states that he "has been denied medical surgeries that specialist have [sic] requested are needed and not just suggested because his condition will continue to worsen."

The Court infers from these allegations that Mr. Havens contends that the alleged conduct is "different treatment" based on his classification as a quadriplegic.  As such, with respect to Defendants Assefa, Okai, and Jacobs, the complaint fails to allege that Mr. Havens is treated differently than similarly situated non-quadriplegic inmates.  That is, there are no allegations that the Defendants assist non-quadriplegic inmates to the toilet or other hygienic issues, and there are no allegations that the Defendants refused to assist Mr. Havens because he is quadriplegic.  Similarly, there is no allegation that the Executive Director has approved similar corrective surgeries for non-quadriplegic inmates, or that he denied Mr. Havens surgery because he is

quadriplegic.  Accordingly, the Court finds that the complaint fails to state a § 1983 claim for violation of the Equal Protection Clause against the Defendants.

### C.  42 U.S.C. § 1997e(e)

With respect to the remaining claims against Defendants Assefa, Jacobs, and Okai, the Defendants argue that the claims are barred under the Prison Litigation Reform Act, 42 U.S.C. §1997e(e) because Mr. Havens seeks only compensatory damages and he has not alleged a physical injury.

Section 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury[.]"  This provision serves as a limitation on the relief a prisoner can receive for injuries suffered while in custody.  *Perkins v. Kansas Dept. of Corrections*, 165 F.3d 803, 807 (10th Cir. 1999).  Although §1997e(e) bars recovery of compensatory damages for failure to allege physical injury, it does not bar recovery of nominal and punitive damages or declaratory or injunctive relief.  *Searles v. Van Bebber*, 251 F.3d 869, 881 (10th Cir. 2001).

Although, the complaint alleges that the Defendants refused to help Mr. Havens to the toilet and he was left lying in his own feces for hours, it is unclear what physical injury, if any, Mr. Havens suffered.  However, construing the pleading liberally, it is possible that allegations of bladder infections may be tied to exposure to his feces.  Accordingly, the Court declines to dismiss Mr. Havens' claims on the basis that he failed to allege a physical injury under §1997(e).

## IV.  Conclusion

For the forgoing reasons, Mr. Havens' Objections **(#61)** are overruled, and the

Recommendation **(#60)** is **ADOPTED**.  The Motion to Dismiss **(#39)** filed by Defendants Rick

Raemisch, Carmen Meyer, Hermella Assefa, Wonda Jacobs, Emmanuel Okai, and Jamie

Harrelson is **GRANTED IN PART AND DENIED IN PART**.  The motion is granted with

respect to all claims against Defendants Raemisch, Meyer, Hermella, Assefa, Jacobs, and Okai,

except for the following: (1) §1983 claim for violation of the Eighth Amendment against

Defendant Raemisch in his official capacity; (2) § 1983 claims for violation of the Eighth

Amendment against Defendants Assefa, Jacobs, and Okai, in their individual capacities.

Because Mr. Havens has been previously given the opportunity to amend his complaint,

the Court does not reflexively grant him leave to amend.  However, if Mr. Havens believes that

he can cure the pleading deficiencies identified here, within 21 days he may file an appropriate

motion seeking leave to amend, tendering a proposed amended pleading that clearly indicates the

material that is allegedly sufficient to overcome the pleading deficiencies.

Dated this 24th day of March, 2014.

BY THE COURT:

Marcia S. Krieger
Chief United States District Judge